**Henry T. Hood and George J. Hood, trading as Hood Cement Company, et al., Appellees, v. Community High School District No. 304, Christian County, Illinois, Appellant.**

1. MECHANICS' LIENS—*what constitutes money due school contractor under contract.* Where a school district agreed to pay a certain sum for labor, materials, etc., and in addition thereto agreed to reimburse the contractor for certain loss if sustained by reason of the district's failure to comply with certain provisions of the contract, such damages, if in fact due the contractor as reimbursement for such loss, constitute money due to the contractor under the contract for which he could have a lien under Cahill's Ill. St. ch. 82, ¶ 23.

2. MECHANICS' LIENS—*when architect's certificate is not condition precedent to enforcement of lien.* Where a school contractor tried to get the final certificate of the architect provided for in his contract but it was withheld upon direction of the attorney for the school board because of an alleged dispute, the contractor was not compelled to wait for such certificate before appealing to a court for enforcement of his lien, especially where the school board accepted the building and occupied it for school purposes.

Hood et al. v. Com. High School Dist. No. 304, 223 Ill. App. 451.

3. CONTRACTS—*duty of court to ascertain parties' intention from written words in contract.* In construing a contract, it is the duty of the court to ascertain, if possible, the intention of the parties from the written words used by them in the contract.

4. CONTRACTS—*what to be considered in construing contract.* In determining the significance to be given to the language used in a contract, the situation of the parties, the nature of the subject-matter with which they are dealing and the purpose sought to be accomplished are matters to be considered by the court.

5. CONTRACTS—*construction as whole.* In construing a contract, the instrument should be read and considered as a whole and so construed as to give force and effect to each of its several parts.

6. CONTRACTS—*when plain and obvious import of language to be given effect.* If the words of a contract are plain and unambiguous, the contract must be so construed as to give effect to the plain and obvious import of the language used.

7. CONTRACTS—*when courts are not concerned with wisdom or folly of contract.* When parties are competent to make a contract, the courts are not concerned with the wisdom or folly of a contract made for a consideration without fraud.

8. CONTRACTS—*when government control of railroads is not excuse for failure to deliver goods within reasonable time.* The mere fact that the railroads were under the control of the government in time of war will not excuse one from his contract to deliver goods within a reasonable time, where he has failed to limit, in the contract, his liability in respect to such contingency.

9. MECHANICS' LIENS—*sufficiency of evidence to prove that contractor's loss was occasioned by federal government.* In a mechanics' lien suit against a school district where the contractor sought damages under the contract for delay by the district in furnishing brick according to the contract, where the defense was made that such delay was due to interference with shipments by the federal government in the exercise of its war powers, evidence examined and *held* not to show that the loss sustained by the contractor was occasioned by the government, or any one having any authority to act for it.

10. BUILDING AND CONSTRUCTION CONTRACTS—*contract as instrument in writing on which interest allowable.* A building contract *held* to be an instrument in writing upon which interest would be allowed under Cahill's Ill. St. ch. 74, ¶ 2.

11. MECHANICS' LIENS—*right of contractor to interest.* In a mechanic's lien proceeding, *held* that the contractor was not entitled to interest upon that portion of an amount found due to him which the owner was, under the contract, authorized to withhold to indemnify it until the amount due to subcontractors and other claimants was ascertained.

Hood et al. v. Com. High School Dist. No. 304, 223 Ill. App. 451.

Appeal from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded with directions. Opinion filed October 25, 1921.

MCBRIDE & VOGELSANG, for appellant.

J. J. BULLINGTON and BARBER & BARBER, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

This was a suit for the enforcement of a subcontractor's lien for materials furnished and labor and services rendered in the erection of a high school building for Community High School District No. 304, hereinafter called the appellant. Intervening petitions were filed by several subcontractors and an answer was filed by Joseph Lorscheider, the original contractor, which he asked to have stand as a cross-bill.

The cause was referred to the master in chancery, who took the evidence and made report to the court of his proofs and findings. Exceptions were filed to the master's report and, upon final hearing in the circuit court, the court entered a decree finding that under the contract between appellant and Lorscheider there was due the sum of $7,500 and $868.68 as extras agreed upon, and that in addition thereto there was due as damages, under the contract, for delay in furnishing face brick the sum of $6,434.87, making a total sum of $14,804.45, due from appellant with interest at 5 per cent thereon from October 31, 1919, making the total amount due under the decree as of the date thereof of $15,785.25. The decree found the various amounts due the complainants and intervening petitioners, making the same a lien on the premises and giving to Lorscheider a lien for the balance of said sum. From this decree appellant appealed to this court.

It is claimed by appellant that any allowance of damages in a suit of this character, brought by a sub-

454    Appellate Courts of Illinois.

Hood et al. v. Com. High School Dist. No. 304, 223 Ill. App. 451.

contractor to enforce a lien, is in contravention of the statute pertaining thereto and contrary to the expressed intention therein.

The statute in question, section 23, ch. 82, Rev. St. Ill. (Cahill's Ill. St. ch. 82, ¶ 23), provides "any person * * * shall have a lien on the money * * * due or to become due such contractor under such contract." The question, therefore, is: Were the damages allowed by the court and for which lien was given moneys due or to become due under the contract?

Appellant in and by the contract in question agreed to pay a certain sum for the labor, materials, etc., and in addition thereto agreed to reimburse the contractor for certain loss if sustained by the contractor by reason of appellant's failure to comply with certain provisions of the contract. It follows, therefore, that, if the so-called damages were in fact due the contractor as reimbursements for such loss in accordance with said provisions of the contract, they were money due to the contractor under such contract and the contractor under the statute in question could have a lien therefor.

It is next contended by appellant that the contract provides that payments shall be made only upon the certificates of the architect and that final certificate shall include the amounts withheld on all previous estimates and shall be issued as soon after the contract is completed as the contractor satisfies the owner that there are no liens or claims for liens existing against the building for labor or material furnished under this agreement by the contractor, and that final certificate has never been issued.

Both the amended bill, the answer and the cross-bill of Lorscheider allege a refusal of the architect to issue a final certificate through fraud and collusion with the school board. After the completion of the building, Lorscheider demanded a final certificate and payment of the amount due him several times. The architect re-

fused to give the certificate. The architect was directed by the attorney for the school board not to issue a certificate because there was a dispute between the school board and the contractor and the architect wrote Lorscheider that "with these instructions I think I had better do nothing further in the matter until I am told to do so." According to the testimony of the president of the school board, the matter in dispute was that the contractor was demanding damages for delay in addition to extras and the balance of the amount specified in the contract while the board was willing to pay him for extras and the balance of the specified amount, but were only willing to pay these amounts on condition the contractor received them in full settlement, which he refused to do. Under these conditions we are of the opinion that the contractor or a subcontractor was not compelled to wait for an architect's final certificate before appealing to the court for an enforcement of his lien, especially in view of the fact that the school board accepted the building and occupied it for school purposes.

It is next contended that the delay complained of was caused by priority orders of the United States government limiting the use of certain materials excepting for special purposes granted priority under the government restrictions.

The contract in question provided: "All the common brick, * * * and all the face brick will be furnished by the owner, f. o. b. cars, Stonington, Illinois * * *. All this material mentioned above has been purchased from the Decatur Brick Company, Decatur, Illinois, * * * and a sample can be seen at the office of Mr. Andrew Chapman * * * Stonington, Illinois. * * * A darker brick of the same kind will be furnished for the base course around the building below the first stone belt, and the contractor will see that these are the only ones used." The contract also provided: "Art. VIII. The owner agrees

456    Appellate Courts of Illinois.

Hood et al. v. Com. High School Dist. No. 304, 223 Ill. App. 451.

to provide all labor and material essential to the conduct of this work, not included in this contract, in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the Contractor, agrees that he will reimburse the Contractor for such loss."

The evidence showed that there was considerable delay in furnishing the darker brick for the base course and the face brick and that the progress of the work was delayed thereby, thereby causing loss to the contractor. The question arises, therefore, whether or not under the terms of the contract, under the particular circumstances of this case, the contractor is entitled to be reimbursed for such loss.

In construing a contract, it is the duty of the court to ascertain, if possible, the intention of the parties from the written words used by them in the contract. *Swartz v. Hiler* (Mo. App.), 207 S. W. 258; *White v. Greenwood,* 40 Cal. App. 113, 180 Pac. 45. In determining what significance should be given to language where used in a contract, the situation of the parties, the nature of the subject-matter with which they are dealing and the purpose sought to be accomplished are matters to be considered by the court. *Raleigh Lumber Co. v. Wilson,* 69 W. Va. 598; *Snider v. Robinett,* 78 W. Va. 88, 88 S. E. 599.

In the construction of a contract, the instrument should be read and considered as a whole and so construed as to give force and effect to each of its several parts. *Hunter v. Gulf Production Co.* (Tex. Civ. App.), 220 S. W. 163; *Mikusch v. Beeman,* 110 Wash. 658, 188 Pac. 780; *Dick v. Goldberg,* 295 Ill. 86.

If the words of the contract are plain and unambiguous, the contract must be so construed as to give effect to the plain and obvious import of the language used. *Bearss v. Ford,* 108 Ill. 16; *Kansas City v. Public Service Commission,* 276 Mo. 539, 210 S. W. 381. When the parties are competent to contract, with the wisdom

or folly of their contracts, made for a consideration and without fraud, courts of law have no concern. *Florida Ass'n v. Stevens*, 61 Fla. 598; *Mizell Live Stock Co. v. J. J. McCaskill Co.*, 59 Fla. 322, 51 So. 547.

The provision of the contract in question is plain and unambiguous in its terms. The mere fact that the railroads were under the control of the government, in time of war, will not excuse one from his contract to deliver goods within a reasonable time where he has failed to limit, in the contract, his liability in respect to such contingency. *Illinois Cent. R. Co. v. McClellan*, 54 Ill. 58; *Illinois Cent. R. Co. v. Christy & Co.*, 64 Ill. 128; *T. W. & W. Ry. Co. v. Lockhart*, 71 Ill. 627; *Phelps v. Illinois Cent. R. Co.*, 94 Ill. 548.

However, were the rule otherwise in this State, it would avail appellant nothing in this case as there is no competent evidence in the record that any loss for which the contractor was ordered reimbursed by the decree was occasioned by the government, or by any one having any authority to act for the government. It is true that the president of the school board testified that shipments of brick were made on this contract until delay occurred on account of orders of the government, and the general manager of the Decatur Brick Company, from whom the brick were purchased, testified that they furnished brick until they were forced to discontinue delivery on account of war conditions by orders given by the government to discontinue all shipments except on priority orders, but no orders from the government or any official of the government was introduced in evidence. Neither is there any evidence showing what the so-called orders of the government were, by whom they were given or the source of the authority of the person giving such orders. Appellant did introduce in evidence some letters of the chairman of the neighborhood council of defense and of D. E. Felt, chief of resources and conservation board and letters to him. We fail to see the compe-

tency or materiality of any of such letters. The neighborhood council of defense was a self-constituted body, having no standing, power or authority under the laws of the United States or the State of Illinois and there was no resources and conservation board created by any statute of the United States or State of Illinois.

As a matter of fact, the contract which was entered into June 6, 1918, recited that the brick had already been purchased and the general manager of the company which furnished the brick testified that this contract to furnish the brick was made with the school board May 11, 1918; that they had practically all of the order on hand in May, 1918, and that the shipments of brick were made as requested by the school board.

The progress of the work upon the school building stopped August 10, 1918, for want of brick, and no socalled government order of September 3, 1918, could in any event excuse appellant from liability under the plain and unambiguous terms of the contract for loss occasioned by a failure to deliver brick which could have been delivered in May, June, July or August, 1919. *Cannon v. Hunt,* 113 Ga. 501, 38 S. E. 983; *Eugster & Co. v. West,* 35 La. Ann. 119, 48 Am. Rep. 232; *Booth v. Spuvten Duyvil Rolling Mill Co.,* 60 N. Y. 487.

It is next contended by appellant that the evidence does not warrant such a finding of damages as is found by the decree. Without going into the details of the evidence upon this point, we are of the opinion that there was sufficient evidence to warrant the decree and that we would not be warranted in disturbing the finding.

It is likewise contended that there is no authority in law for allowing interest as an element of damages in this case.

Section 2, ch. 74, Rev. St. of Ill. (Cahill's Ill. St. ch. 74, ¶ 2) provides: That creditors shall be allowed

THIRD DISTRICT—OCTOBER, 1921.        459

Hood et al. v. Com. High School Dist. No. 304, 223 Ill. App. 451.

to receive interest at the rate of 5 per cent per annum for all moneys after they become due on any instrument in writing. The building contract in question was such an instrument in writing, and interest therefore was properly allowable upon it. The building contract in question, however, provided: "If at any time there shall be evidence of any lien or claim for which, if established, the owner of the premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, amounts sufficient to completely indemnify himself against such lien or claim." By the decree in this case of the $15,785.25 found due from appellant under the building contract, $11,270.22 was found to be due to subcontractors and claimants other than the contractor, and under the provisions of the contract just quoted, appellant had a right to retain such sum to indemnify itself until the amount of such claims were ascertained. We are of the opinion, therefore, that the court erred in allowing interest on said sum of $11,270.22 from October 31, 1919, but should only have allowed interest on the sum of $4,515.03.

The decree is in all other respects affirmed, but should be modified in the respect indicated. The cause is therefore reversed and remanded to the circuit court with directions to the circuit court to modify the decree in the respect herein indicated.

*Reversed and remanded with directions.*