## A. J. Wuellner and J. C. Fallon, Copartners, Trading as J. J. Wuellner and Son, Appellants, v. Illinois Bell Telephone Company, Appellee.

Heard in this court at the February term, 1944. Opinion filed February 28, 1944. Rehearing denied May 23, 1944.

VERLIE, EASTMAN & SCHLAFLY and EMERSON BAETZ, all of Alton, for appellants.

SIDLEY, MCPHERSON, AUSTIN & BURGESS, of Chicago, and WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellee; HOWARD P. ROBINSON, of Chicago, and GEORGE D. BURROUGHS, of Edwardsville, of counsel.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from an order of the circuit court of Madison county, dismissing the amended complaint of appellants, A. J. Wuellner and J. C. Fallon, Copart-

ners, engaged in business as J. J. Wuellner & Son (hereinafter called plaintiffs), and rendering judgment in bar, in favor of the appellee, Illinois Bell Telephone Company, a corporation (hereinafter called defendant). The plaintiffs elected to stand by their amended complaint, and contend in this court that the court below erred in sustaining the defendant's motion to dismiss such amended complaint.

The amended complaint consists of two counts. In the first count plaintiffs, after alleging that they were and are engaged in the construction business, attached a copy of a contract in writing whereby the plaintiffs undertook to construct for defendant, at Woodriver, Illinois, a one-story building. The contract is attached to and made a part of the complaint by reference. The first count goes on to say that the contract was drawn by defendant, and was based upon a so-called "cost-plus scheme" but obliges defendant to pay only the actual cost of the work done and material furnished by plaintiffs, plus a fee for overhead and profits for plaintiffs; that the contract purports to fix a maximum for the cost and fee of $43,475, but that it further contains provisions obligating plaintiffs to make detailed reports of costs, and in paragraph H directs plaintiffs to submit to the defendant, through its agent and architect, a final statement, complete and analyzed, showing plaintiffs' total cost, and that such paragraph further obliges defendant to object to such final statement within 30 days of its submission, if defendant is not to be bound thereby, and provides if notice of the objection is not given within 30 days, the final statement shall be conclusive. Such count of the complaint goes on to allege that a final statement showing a total cost and fee of $53,309.51 was submitted, and that defendant notified plaintiffs of its objection to only $158.59, leaving a total cost and fee, without objection by defendant, of $53,150.92. Such count goes on to allege performance in full by plaintiffs and demands

payment of the balance remaining unpaid, in the sum of $53,150.92, and refers to the fact that the defendant has tendered the balance which would·be necessary to make payment on the basis of the cost and fee of $43,475 (such amount was thereafter actually paid in court, and the only issue raised by the pleadings is whether or not the plaintiffs can recover in excess of the maximum fixed in the contract, of $43,475).

The provision of the contract to which plaintiffs make reference in the first count of the complaint is what is referred to as an "audit" provision in the contract. It provides specifically that when the work provided for has been fully and finally completed and the contractor has rendered to the architect, for the owner, a full and complete itemized statement in writing, referred to as a "final statement" showing the actual cost to the contractor of the work performed, the owner is to have the right to have the statement audited, and within 30 days he can object in writing to any of the items specified therein. It further provided that in event the owner shall not give such notice, the statement shall be conclusive of the actual cost of the work, and a certificate is to be accordingly issued by the architect. That provision must, however, be read in connection with other provisions of the contract, notably section B, designated "Guaranteed Maximum Cost." This provision reads as follows:

"The work covered by this agreement is to be performed by the contractor on the basis of actual cost of labor, material and equipment plus a fee of $3200.00 for overhead and profit to the contractor. The contractor guarantees that the actual cost plus fee will not exceed the amount of this agreement $43,475.00. Should said actual cost plus contractor's fee be less than the guaranteed maximum amount, 20% of the difference or savings shall be paid to the contractor as additional compensation and the remaining 80% shall revert to the Owner. Should said actual cost plus contractor's

fee exceed the guaranteed maximum amount, such excess shall be borne by the contractor. It is the intent hereof that the cost to be paid by the Owner for work covered by this agreement shall in no event exceed the amount set forth, and further, that said contractor guarantees this. The guaranteed maximum amount may be increased or decreased by additions or deductions, but only by change orders in writing signed by the Architect and the Owner, as provided for by Article Five herein. In connection with any such increase or decrease in the guaranteed maximum amount, the order shall include for contractor's overhead and profit 7½% of the estimated cost of the work to be added or omitted.''

It is obvious that the audit provision was simply one which was consistent with the clause referring to the guaranteed maximum cost, and was designed to afford the owner an opportunity to participate in any difference or savings in actual cost, to the extent of 80% thereof, as provided in such section. There is nothing in the provision referred to as the audit provision which makes it obligatory upon defendant to object to the statement if the maximum cost provision is applied. It was obviously designed only for the purpose indicated by the express language of such provision; that is, to fix the actual cost of the work; but there is nothing in such provision which either expressly or impliedly authorizes a right of action for a sum in excess of the maximum provision simply by reason of the omission of the defendant to object to such statement.

The second count of the amended complaint, in addition to repeating and realleging the general allegations referred to in the first count, avers that the contract, when entered into, purported to fix the maximum cost (which maximum cost figure was set forth in section 2, and A, and B) of the contract, with the words, ''Guaranteed Maximum contract amount—$43,475.00,'' and, ''the said defendant only agrees to pay to the said

contractor not to exceed the sum of $43,475.00. . . ."
in addition to the section hereinabove fully set forth
as section B thereof, referring to guaranteed maximum
cost.

Such second count goes on to state that said provisions were for the sole and exclusive benefit of the defendant, and ". . . they were subsequent to the date of the said contract and during the performance of the said contract by the plaintiffs, waived and abrogated by the defendant, through its agents and servants, by —' (a) demanding the use and employment, in the construction of the said building, of materials other than those required by and in substantial conformity with the specifications referred to in the said contract, when such materials could not be used and employed without increasing the cost and fee for the said building above $43,475.00; and (b) repeatedly, and without reasonable cause, delaying the approval of plans, drawings and materials submitted by the plaintiffs and their sub-contractors for use in the said building and its construction, thereby causing the plaintiffs to become liable for and expend sums increasing the cost and fee for the said building above $43,475.00.' "

The defendant contends that the circuit court properly dismissed the amended complaint for failure to state a cause of action and for substantial insufficiency in law, for reasons which will be hereinafter set forth. It is first contended that the provisions of the contract which limit the amount to be paid to the plaintiffs and which require that no additional amounts be paid, unless authorized by a written statement, signed by the architect and defendant, govern the cause of action. The contract expressly provides, in section B hereinabove set forth, that the guaranteed maximum amount may be increased or decreased only by change orders in writing, signed by the architect, as provided in article 5 of the contract. In article 5, the contract provides that changes or alterations may be made "pro-

vided that no new work of any description done on the premises, or any work of any kind whatsoever shall be considered an extra or a charge in excess of the amount herein agreed to be paid, unless a statement in writing of the amount to be paid for the same shall be submitted by the contractor and agreed to and signed by the architect and said owner before its commencement; . . . ."

In the determination of this matter before this court the provisions of the contract which are set forth as part of the amended complaint must be construed by this court, and it is such provisions which govern (unless they have been waived) rather than allegations of the complaint which may be inconsistent therewith (*Marcus v. S. S. Kresge Co.,* 283 Ill. App. 556; *Woods v. First Nat. Bank of Chicago,* 314 Ill. App. 340). If this were an action for "extras" alone, or for additional amounts under the expressed provisions of the contract, the defendant's position on the first point, as set forth herein, would be well taken. It is the plaintiffs' contention, however, that the maximum price provision, as well as the provision relating to "extras," have been waived (*Stresenreuter Bros. v. Bowes,* 233 Ill. App. 143, 161).

As we have previously indicated it is thus apparent from an examination of the complaint and the contract that no cause of action was stated in count 1 of the complaint. The basic question to be determined, therefore, is whether or not plaintiffs' amended complaint states a cause of action in count 2 thereof in connection with the allegations relating to waiver.

Under the Illinois Civil Practice Act, a complaint must allege facts stating the cause of action (Illinois Civil Practice Act, section 31 (1), section 42 (2) ; 1943 Ill. Rev. Stat., ch. 110, secs. 155 and 166 [Jones Ill. Stats. Ann. 104.031, 104.042]), and in determining whether or not the complaint states a cause of action the complaint must be construed most strongly against

the plaintiffs, in that a motion to dismiss under such circumstances admits only well pleaded facts, but does not admit conclusions of fact or of law. This principle is illustrated in *Marcus v. S. S. Kresge Co., supra,* at page 562, where the court pointed out that an allegation to the effect that persons contracting for the erection of buildings, such as the one described in the contract in that case, calling for spread footing foundations, have knowledge that quicksands are not encountered, and that the contract price for the erection of the building is agreed upon without reference to encountering any quicksand in the excavation, were mere conclusions of the pleader and were not admitted by the demurrer.

The obligation of a court, likewise, in construing contracts of the character before us in the instant case, is to discover and give effect to the intention of the parties, according to the terms of the written agreement (*Minnesota Lumber Co. v. Whitebreast Coal Co.,* 160 Ill. 85, 93), and the contract must be construed, in absence of ambiguity, according to its plain and obvious import (*Hood v. Community High School Dist. No. 304,* 223 Ill. App. 451). As a consequence we have concluded that the allegations of count 1 of the complaint, which seek to interpret the audit provision as a basis of recovery against the defendant, fails to state a cause of action.

Similarly, in alleging a waiver, it is not sufficient simply to allege that a waiver occurred, but the facts constituting the waiver must be set out, with sufficient detail so that a defendant can be prepared to defend against the claim, and so that the court may determine that if the ultimate facts so set out are proved there would be a basis for waiver, as a matter of law. In *Keefer v. United Elec. Coal Companies,* 292 Ill. App. 36, at page 52, the court stated: "The appellant insists, further, that the alleged offer to perform on his part and the failure and refusal of the defendant to

make the payment upon the offer of tender constituted (without an actual tender) a waiver of further performance by the plaintiff of the conditions to be performed by him under the contract, and that his right of action thereupon accrued. Under the vague and indefinite allegations of fact and conclusions as to what was done by the respective parties and when the alleged transactions or offers took place, we hold that no waiver of lawful tender and continuance of such tender of performance on the part of plaintiff appears on the face of the declaration.''

In the instant case, the allegations of waiver are divided in the second count of the complaint into two sections, the first of which alleges that the waiver was occasioned by defendant demanding the use and employment in the construction of the building of materials other than those required in conformity with the specifications referred to in the contract when such materials could not be used and employed without increasing the cost and fee for the building above $43,475. There is no allegation in conjunction therewith that plaintiffs acceded to such demand, or that there was any substitution of materials in accordance with the demand of defendant.

The other basis upon which plaintiffs predicate their contention of waiver charges that defendant repeatedly, and without reasonable cause, delayed the approval of plans, drawings and materials submitted by plaintiffs and their subcontractors for use in the building and its construction, thereby causing plaintiffs to become liable for and expend sums increasing the cost and fee for the building above $43,475. In connection with this allegation plaintiffs have cited the case of *Stresenreuter Bros. v. Bowes, supra.* That case, however, is distinguishable from the instant case. In that case the contractor agreed to build ''in accordance with plans and specifications to be prepared'' and, ''based upon a similar building erected by said owners

. . . and known as the St. Clair Building.'' At the time of the agreement in that case there were no plans and specifications of a building in existence. Early in the course of construction, the contractor told the defendant that the plans and specifications being delivered to him were entirely different from the St. Clair Building, and that the cost of construction would exceed the contract price. The architect and contractor in that case went so far as to prepare a list of the changes and the additional cost to the defendant. There was clearly a waiver in that case.

In the instant case in the contract which was made a part of the complaint, the plaintiffs agreed expressly to construct the building ''in conformity with drawings and specifications and *addendum* made by Holabird & Root, architects (which drawings consisting of plans, details, sections and elevations and specifications, are signed by the parties hereto and are hereby made a part of this agreement). . . .'' Apparently all the plaintiffs were required to do under the terms of the contract was to follow such plans and specifications and in the event that their cost equaled or exceeded $43,475, they would be entitled to the amount of $43,475 from defendant. There was no provision whereby plaintiffs were required by the contract to prepare plans and drawings for defendant's approval, or where, in the contract, defendant was given the right, privilege or duty of approving any material that went into the construction. We must, therefore, conclude that the second count of the amended complaint fails to state a cause of action in that plaintiffs have failed to allege the necessary facts which would constitute a waiver of the provisions in the contract which limits the amounts to be paid to plaintiffs to the sum of $43,475, or a waiver of the requirement relating to obtaining a written statement signed by the architect and defendant, authorizing additional compensation on the basis of ''extras'' under the contract. In view of the

fact that plaintiffs have received all amounts to which they were entitled under the contract, and in view of the fact that the amended complaint fails to allege a cause of action in either count, as against defendant, on the basis of the allegations contained therein, and the contract incorporated therein by reference, the circuit court properly dismissed plaintiffs' amended complaint and the order of such court will, therefore, be affirmed.

*Affirmed.*